857 So.2d 925 (2003)
E.I. DU PONT DE NEMOURS AND COMPANY, Appellant,
v.
DESARROLLO INDUSTRIAL BIOACUATICO S.A., Appellee.
No. 4D01-779.
District Court of Appeal of Florida, Fourth District.
September 17, 2003.
Rehearing Denied November 18, 2003.
*926 Jane Kreusler-Walsh and Rebecca J. Mercier of Jane Kreusler-Walsh, P.A., West Palm Beach, and Thomas M. Sherouse of Shook, Hardy & Bacon, L.L.P., Miami, for appellant.
Walter G. Campbell, Jr., Robert J. McKee, Ivan Cabrera of Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock & McKee, and Bruce Rogow, Beverly A. Pohl and Cheryl Zickler of Bruce S. Rogow, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Appellant, E.I. Du Pont De Nemours and Company, a chemical manufacturer, challenges a final judgment based upon a jury verdict finding that the appellant failed to warn of the danger of appellant's product, Benlate, to shrimp grown by appellee. Because appellee failed to plead a cause of action for failure to warn and it was not tried by implied consent, we reverse the final judgment.
Desarrollo Industrial Bioacuatico S.A. ("DIBSA"), the appellee, owns and operates a shrimp farm in Taura, Ecuador. The farm consists of massive ponds in which shrimp are bred and harvested for resale. The ponds derive water from the Guayas River estuary system. Up river from the shrimp farm are banana farms, the closest of which is approximately ten miles. Banana farming is Ecuador's largest agricultural industry, with shrimp farming second in importance.
In 1992 shrimp began dying at a rapid rate in the shrimp farms in Ecuador. Around the same time, banana farmers were combating a devastating fungus, Black Sigatoka, that had developed due to heavy rainfalls from El Nino. Several chemical companies were working with the banana farmers to prevent the fungus. Du Pont had offered its expertise to the banana industry, recommending rotation of fungicides to hinder resistance by the fungus. The fungicides the farmers rotated included Benlate, which was produced by Du Pont, and Tilt and Calixin, produced by other chemical companies. All three chemicals were toxic to shrimp.
The shrimp farmers searched for the cause of the shrimp deaths. One scientist discovered lesions on the shrimp and named the disease Taura syndrome. Then another scientist explored the connection between the lesions and the chemicals being used by the banana farmers and concluded that the chemicals were causing the lesions. However, another expert concluded that the lesions and shrimp deaths were caused by a viral agent and challenged the validity of the science upon which the first scientists determined that the chemicals caused the shrimp lesions.
While DIBSA first filed suit against the manufacturers of Tilt and Calixin, it subsequently *927 filed the present action against Du Pont claiming that it was responsible for the shrimp deaths. In its complaint, DIBSA alleged that Du Pont sold its products to the Ecuadorian banana farmers and had a duty to test its product to make sure that it was safe for the environment in which it was being used and would not harm non-target organisms or businesses which would come into contact with the chemical. Specifically, the complaint alleged that Du Pont was negligent in the following respects:
a. The Defendant negligently formulated and sold Benlate in such a way that they were hazardous to shrimp.
b. The Defendant negligently failed to manufacture the product and/or supervise the manufacture of the product so as to render them safe for shrimp.
c. The Defendant negligently failed to test and analyze its chemicals to determine whether they were, in fact, safe for use in areas where shrimp would live or where shrimp would be grown commercially.
d. The Defendant negligently designed and manufactured the product which did not rapidly break down into harmless chemicals and, as such, represented significant environmental hazard, and in particular, a hazard to shrimp.
e. The Defendant negligently designed and manufactured chemicals which did not adequately bind to the soil and to the target plants such that the chemical in question freely entered the outside through the flow of water and other means such that the harmful chemicals were carried in substantial quantities to locations such as the Plaintiff's shrimp farms.
f. The Defendant failed to take proper precautions to see to it that its chemicals were in a safe and proper condition so as to be useable in the vicinity of other businesses including shrimp farms.
g. The Defendant failed to take proper precautions to ascertain the synergistic environmental dangers of combining the product in question with other agricultural pesticides which they knew or should have known would be used in conjunction with their product and would enhance the toxicity to shrimp, decreasing shrimp tolerances to these toxins and substantially enhancing the shrimp's susceptibility to infection by disease due to their weakened condition from pesticide contamination.
h. The dangerous chemical properties of the product were known to the defendant for a substantial length of time, and yet the Defendant negligently failed to stop the sale of the product or curtail the use of the product in areas where the Defendant knew or should have known that it would cause damage to shrimp farms.
As a result of this negligence, appellees alleged substantial damages due to the die-off of shrimp. The complaint alleged a claim based on negligence only and not on any theory of strict liability. Du Pont answered, denying that its product had caused or contributed to any damages of DIBSA. As one of many affirmative defenses, it also alleged that Plaintiff and others had been made aware of the dangers of the product.
During the course of discovery and DIBSA's continued questioning of witnesses regarding labels and warnings issued by Du Pont regarding Benlate, Du Pont moved for summary judgment alleging that despite DIBSA's framing of its complaint, the case was a "pure and simple failure to warn complaint" which was precluded by the Fungicide Insecticide and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, which regulates the warning *928 labels placed upon pesticides. DIBSA filed a response, stating:
DuPont urges the court to devine [sic] a "disguised labeling claim." DuPont asserts that "Plaintiffs are essentially arguing that Du Pont failed to warn against supposed dangers to shrimp."

This is not an intelligible reading of the complaint. ... Du Pont's attempt to rewrite plaintiffs' claim is wholly improper in the context of a motion for summary judgment.
As Du Pont acknowledges, the Fourth Circuit's test in Worm v. American Cyanamid Co., 5 F.3d 744, 747-48 (4th Cir.1993) for whether negligent design and testing claims are disguised labeling claims is whether the manufacturer "in seeking to avoid liability for the error, would choose to alter the product or the label." Here, plaintiffs have categorically alleged that the Benlate itself functioned improperly and that Du Pont was negligent in its manufacture, design and testing.
(Emphasis added) (citations omitted). DIBSA also noted that it was neither a purchaser nor user of Benlate and had no control over the banana farmers or their use of the product.
At the August 2000 hearing on the motion, approximately two months before the trial, Du Pont's counsel pointed to DIBSA's claims that this was not a labeling case but that in any event DIBSA was raising a warning claim. DIBSA responded that it was not a labeling claim and thus FIFRA did not apply. The court denied summary judgment.
Du Pont then filed a motion in limine to exclude evidence regarding failure to warn on the ground that DIBSA had failed to allege a claim for failure to warn in its complaint. At the hearing on the motion, held just a few days prior to the start of trial, Du Pont's counsel noted that the allegations of failure to warn were not in the complaint, and therefore evidence of a failure to warn should not be admitted at trial. In response, DIBSA's counsel argued, contrary to the response it filed to the motion for summary judgment, that a failure to warn claim had in fact been made in the complaint. He gleaned this cause of action from the allegations that Du Pont negligently formulated and sold the chemicals in such a way as to be hazardous to the shrimp. Counsel also argued that the allegation that Du Pont failed to take proper precautions to see that the chemical was in a safe condition to be useable in the vicinity of the shrimp farms went to the issue of warnings. The court denied the motion on the ground that the allegations of negligence "would include failure to warn for whatever warning is necessary for a known dangerous product..."
The case went to trial, and from the beginning failure to warn became a central issue in DIBSA's case, along with Du Pont's failure to test its product on shrimp. Du Pont argued strenuously that its chemical did not cause or contribute to the shrimp deaths, and contended that its label was adequate. Throughout the testimony, DIBSA stressed that the Benlate label stated that it was toxic to fish but did not state that it was toxic to shrimp, shrimp being a crustacean and different from fish. Moreover, it asked several witnesses whether the label contained warnings regarding potentials for runoff. In examination of witnesses, it asked if Du Pont had warned the banana growers, the government of Ecuador, or the shrimp farmers of Benlate's toxic effect on shrimp.
Du Pont moved for directed verdict, arguing that DIBSA had not proved its failure to warn claim, but counsel prefaced his argument to the court by reminding it that Du Pont was not waiving its previous argument *929 that the failure to warn theory had not been pled. The court denied the motion. In closing argument, DIBSA's counsel spent considerable time discussing Du Pont's failure to warn the banana farmers, the shrimp farmers or the government about Benlate's toxic potential. He talked about the product label and its failure to warn that the product was toxic to shrimp or sufficiently warn of the dangers of runoff.
The jury was instructed to determine whether Du Pont "was negligent in the failure to warn, test and distribute Benlate." The verdict form asked three questions on liability: whether Du Pont was negligent "in the failure to test Benlate;" "in the failure to warn of Benlate;" and "in the distribution of Benlate." During deliberations, the jury came back with a question indicating that they had agreed that Du Pont was negligent for failure to warn and not negligent in distribution of Benlate, but they could not agree on the failure to test. After the court gave the jury an additional instruction, counsel for DIBSA moved to conform the evidence to the pleadings on the failure to warn. Du Pont's counsel vehemently objected because the issue was not pled before. He reminded the court that they had consistently contended that it was improper for the jury to decide the issue when it was not in the complaint. The court denied the motion to conform the pleadings.
The jury returned its verdict, finding Du Pont negligent only for a failure to warn of Benlate. It awarded $10,063,165 plus significant prejudgment interest. Among other post-trial motions made, Du Pont moved for judgment notwithstanding the verdict contending that Du Pont was entitled to a judgment in its favor because the jury found for DIBSA only on an unpled claim. The trial court denied the motion, prompting this appeal.
This case is controlled by Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561, 563 (Fla.1988), in which the supreme court held that where a claim is not pled with sufficient particularity for the opposing party to prepare a defense, the plaintiff is precluded from recovery on the unpled claim and a directed verdict is properly entered. In Arky, Freed, a law firm sued a client for fees, and the client counterclaimed on a claim of legal malpractice alleging general negligence. Twelve days before trial, in answers to interrogatories, the client revealed a claim of specific negligence that was not included within the counterclaim. The law firm objected, but the client claimed that the claim was encompassed within the charge of general negligence within the complaint. The law firm's motion for a continuance or, in the alternative, to exclude evidence of the claim, was denied on the basis that the specific negligence claim was included in the general negligence allegations. The jury found for the client on the unpled charge and the law firm appealed the final judgment. The third district held that the trial court erred in determining that the general allegations of negligence stated a cause of action for the specific malpractice alleged at trial, and thus the client had recovered on an unpled theory. Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 527 So.2d 211, 213 (Fla. 3d DCA 1987). It held, however, the law firm was not entitled to a judgment in its favor but to a new trial.
On review, the supreme court held that the law firm was entitled to a directed verdict in its favor, stating, "Bowmar did not prove the allegation of the counterclaim, but rather proved a claim not pled with sufficient particularity for Arky, Freed to prepare a defense. Under our *930 law, Bowmar is thus precluded from recovery on this essentially unpled claim." Arky, Freed, 537 So.2d at 563. The court stated that by objecting to the introduction of evidence on the unpled claim prior to trial through a motion in limine, the law firm had called the court's attention to the fact that the unpled claim was not being tried by consent. See id. Noting that the client took a strategic risk, the court said:
In this case, Bowmar was on notice Arky, Freed considered Bowmar's evidence beyond the scope of the pleadings. Rather than reevaluating this position, Bowmar opposed the motion for continuance and chose to proceed to trial under the risk that Arky, Freed might have been correct [that the claim was not properly pled]. This "reliance" is no different than that of any lawyer who, at trial, chooses to present evidence over opposing counsel's overruled objection. By "relying" on the trial court's ruling, counsel always proceeds at the clear risk of reversal if the trial court was wrong.
[W]e conclude that litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared. Our growing, complex society and diminishing resources mandate the requirement that litigants present all claims to the extent possible, at one time, and one time only.
Id. Similarly, in Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990), the court noted that where a claim was not pled, "the jury could consider that claim only if evidence supporting it had been admitted without objection and an appropriate motion to amend the pleadings to conform to the evidence had been made pursuant to Florida Rule of Civil Procedure 1.190(b)." (Emphasis added) (citing Arky, Freed, 537 So.2d 561).
In this case, failure to warn as a cause of action in negligence was not pled. The allegations made no mention of it, and none of the allegations suggest a failure to warn was the basis of the cause of action.[1] When Du Pont suggested that the claim was a "disguised" failure to warn claim, DIBSA's response emphatically denied that it was making a failure to warn claim. Yet less than five days prior to trial, when Du Pont sought to exclude evidence on failure to warn because it was not pled, DIBSA's counsel argued for the first time that the pleadings encompassed a failure to warn claim. The trial court erroneously determined that, because the product was a dangerous one, allegations of negligence would include a failure to warn, even though one was not alleged. Thus, Du Pont was forced to defend a claim which DIBSA had affirmatively rejected as being part of its causes of action only two months before trial. Moreover, the case DIBSA presented on failure to warn was exactly what DIBSA said it was not alleging, namely that the label was insufficient to warn of the dangers, a claim which would invite FIFRA preemption.
In short, the failure to warn claim was not pled, and it was strenuously objected to prior to trial. As in Arky, Freed, counsel's motion in limine to exclude evidence of the claim was denied. Thus, DIBSA's counsel knew that the evidence came in over objection. In addition, the motion to conform the pleadings to the evidence was made too late in the proceedings. See Schopler v. Smilovits, 689 So.2d 1189, 1190 (Fla. 4th DCA 1997) (finding claimant's motion to conform evidence to the pleadings was untimely when made after the close of all the evidence and after arguments *931 on motions to dismiss and for directed verdict). DIBSA's counsel took a calculated risk that the trial court ruled correctly in determining that the complaint properly pled a claim for failure to warn. The trial court erred, and reversal is required.
DIBSA counters by claiming that the issue is one of prejudice, and Du Point was not prejudiced because counsel knew that failure to warn would be raised by DIBSA early on. This argument is not well taken. Even though Du Pont alleged in its affirmative defenses that it had made the necessary warnings of Benlate's danger, the fact that it may have used warnings to defend a negligent testing claim or distribution claim does not put it on notice that it must defend against a failure to warn claim. Cf. Bogosian v. State Farm Mut. Auto. Ins. Co., 817 So.2d 968, 970 (Fla. 3d DCA 2002) (holding that State Farm was required to plead negligence attributable to DOT as an affirmative defense although plaintiff was aware through the testimony of an expert of the possibility of such a claim). Moreover, how can it be said that Du Pont should have prepared for trial on a cause of action that DIBSA expressly rejected only two months prior to trial? The rule of Arky, Freed requires that claims submitted to the jury either be pleaded or tried by implied consent with the pleadings conformed to the evidence. Neither occurred in this case.
Reversed.
GROSS, J., concurs.
STONE, J., concurs specially with opinion.
STONE, J., concurring specially.
I write separately to emphasize that by this opinion, we essentially recognize that the mandate of Arky, Freed gives no discretion to the trial court to consider prejudice when a party fails to timely seek leave to amend (or meet the requirements to conform the pleadings to the proof). Were it otherwise, I would affirm as, here, there is record support for Appellee's argument that Appellant was not prejudiced.
NOTES
[1] At oral argument, DIBSA's counsel candidly and appropriately conceded that the complaint did not allege failure to warn as a claim.