WARNER, J.
 

 Dr. Paul Minotty, the founding member of Florida Eye Institute, Inc., appeals an $8,000,000 judgment in a shareholders’ derivative suit and individual judgments in excess of $2,000,000 in compensatory and punitive damages in favor of three doctors in the Eye Institute. We consolidate both appeals for purposes of this opinion. The judgments in the derivative suit were entered on claims of securities fraud, common law fraud, breach of fiduciary obligation, and illegal interception of confidential communications. As to the individual doctors, their judgments stemmed from claims of interception of confidential communications of two of the doctors, invasion of privacy, breach of fiduciary duty, and securities fraud in favor of appellee Dr. Zudans. We reverse the judgments for interception of confidential communications, as we conclude that the statute under which the claims were made does not permit recovery for anything other than actual interception of oral communications, which did not occur in this ease. As to FEI’s breach of fiduciary claim, we reverse because the trial court permitted admission of evidence of unpled transactions. And we conclude the court erred in entering judgment for duplicate damages on the securities and common law fraud claims. We also reverse the judgment in favor of Dr. Zudans for fraud, because he failed to present evidence of the proper measure of damages. We affirm the remaining judgments and affirm the issues raised by appellees on cross-appeal.
 

 We begin with the facts underlying the litigation in this case. Dr. Minotty opened an eye care practice called Florida Eye Institute (“FEI”) in Vero Beach in 1985, buying the land and constructing a building to house the practice. He built a surgery center in 1986. Two doctors — Dr.
 
 *827
 
 Roger Meyer and Dr. Karen Todd — -joined the practice and became shareholders between 1986 and 1991. In 1992, Dr. Minotty bought additional land and built a second building to connect to the first and house FEI’s growing practice and surgery and laser centers, called the Surgicenter. Dr. David O’Brien joined the practice in 1998.
 

 Initially, the buildings and surgery center were owned by Dr. Minotty; not FEI. However, in 2001, Dr. Minotty sold to FEI the land and buildings in which the practice was located, for $5.5 million. All of FEI’s then existing shareholders (Drs. Mi-notty, Meyer, Todd and O’Brien) agreed to the purchase price by corporate resolution. When Dr. Baudo joined the practice in 2003, they refinanced the property and distributed the equity that had accumulated to the shareholders.
 

 In 2003, all of FEI’s shareholders (except Baudo) authorized Dr. Minotty to negotiate to sell half the surgery center to FEI.
 
 [1]
 
 Up until this point the Surgicenter was owned by Dr. Minotty through a limited liability corporation. Dr. Minotty sold FEI 50% ownership in the Surgicenter in 10% increments each year for five years. The agreement set a formula to be paid for each 10% increment based upon the profitability of the center. FEI signed a note for each of the 10% shares. The contract also contained a “put” option, which permitted Dr. Minotty to force FEI to purchase the remaining 50% of the surgery center at the end of five years. While the sale was discussed at a shareholders meeting, Dr. Minotty had actually signed the agreements on behalf of both FEI and the Surgicenter the day before the shareholder meeting. At the meeting, he represented to the shareholders that they would have an “option” to purchase the remaining half of the Surgicenter in the future.
 

 From 2003 to 2007, FEI made payments on the notes to Dr. Minotty for its share of the Surgicenter. In return, it received its share of the Surgicenter income. In March 2007, Dr. Minotty informed the other shareholders that he had decided to exercise the “put” and sell the remaining 50% of the Surgicenter to FEI, forcing FEI to buy it, which surprised several of the shareholders. They asked for an appraisal of the Surgicenter, and FEI obtained an expert to appraise the property. During this time the shareholders requested a change in the board of directors of FEI, which Dr. Minotty had occupied as the sole member since the inception of the corporation. Dr. Minotty agreed, and all six shareholders became directors of the corporation.
 

 When the shareholders received the appraisal of the property, several of them determined that the original contract price was unfair. Drs. Zudans and Baudo met with Dr. Minotty, and demanded that he rescind the entire Surgicenter contract. Dr. Minotty refused. Drs. Zudans and Baudo then made a formal demand that FEI sue Dr. Minotty for damages, and a special board meeting was called. A vote was taken, but the doctors reached a deadlock, with two shareholders voting with Minotty and the other three (Baudo, Todd and Zudans) voting to sue.
 

 As the relationship between the shareholders deteriorated, Dr. Minotty received information that caused him to suspect that the dissident shareholders were planning other methods to remove him from the practice, including setting him up for an arrest the evening of the office holiday party in December 2007. FEI documents were also disappearing from the offices. After contacting the Vero Beach Police, he
 
 *828
 
 hired a private investigator to assist him. With Dr. Minotty’s concurrence, the private investigator set up hidden security cameras at FEI offices. These included the offices of Drs. Todd and Zudans. Although the cameras were equipped with audio as well as video recording, the audio recording never worked and therefore never intercepted any oral communications. Within a few days of their installation, the doctors were alerted to the cameras. The cameras were removed, but not before video was recorded of the doctors in their offices both alone and with their patients.
 

 In January 2008, Drs. Todd, Baudo and Zudans brought a shareholders’ derivative suit on behalf of FEI against Dr. Minotty. They alleged claims for appointment of a receiver, breach of fiduciary duty, securities fraud, common law fraud, and illegal interception of communications under section 934.03, Florida Statutes. The complaint alleged that Dr. Minotty had acted as both the buyer and the seller in the sale of the Surgicenter, and that he had not given full disclosure to the shareholders. Additionally, it alleged that Dr. Minotty had engaged in self-dealing, breaches of fiduciary duties, and accounting activities that harmed FEI. It alleged that an independent valuation of the Surgicenter had valued it at significantly less than the purchase price that Dr. Minotty negotiated for himself. Finally, it alleged illegal interception of communications in violation of section 934.03, based upon the use of the hidden security cameras.
 

 Shortly after the derivative action was filed, Drs. Todd, Baudo and Zudans personally sued Dr. Minotty, alleging breach of fiduciary duties, interference with business relationships, invasion of privacy, and intentional infliction of emotional distress. Drs. Zudans and Todd, whose offices had been wired, also included individual claims for interception of communications. And Dr. Zudans, who had purchased his shares for $200,000 when he joined the practice, included a count for fraudulent misrepresentation in the purchase of the stock.
 

 The case proceeded with lightning speed and was set for trial within six months. Only eighteen days prior to trial, the plaintiffs moved to amend the complaint to request punitive damages. The trial court denied the request as to all counts except for the interception of communications claim, determining that a claim for punitive damages was practically automatic under the statute.
 

 Trial proceeded on all of the claims. As to the interception of communications claims, the evidence showed that cameras and microphones were installed, but the microphones never worked. The operator of the camera was able to record video but not audio of the doctors dealing with patients and alone in their offices. The doctors testified as to their emotional turmoil at having been surreptitiously viewed.
 

 A significant portion of the trial dealt with the 2001 real estate sale from Dr. Minotty to FEI. At trial, Dr. Minotty objected to the introduction of any evidence regarding the 2001 real estate sale to FEI as being outside of the pleadings. None of the allegations of the complaint referenced that transaction. He also contended that any claim regarding that 2001 transaction would be time barred because it had occurred more than four years earlier. In contrast, the doctors contended that the general allegations of mismanagement covered the 2001 sale and that the evidence regarding that sale should be admitted. The trial court overruled the objections and admitted evidence regarding the 2001 sale.
 

 The trial went on for weeks. Lengthy and detailed testimony was presented with respect to the financial dealings between the parties. FEI’s experts testified that
 
 *829
 
 FEI overpaid Dr. Minotty $3,852 million for the Surgicenter stock (including interest), based upon its fair market value at the time of the sale. They also told the jury that an additional $3.1 million in losses to FEI occurred through the misalloeation of expenses between FEI and the Surgicenter. With respect to the 2001 building sale from Dr. Minotty to FEI, they testified that FEI paid $2 million in excess of the property’s value (including statutory interest from the date of sale). After the conclusion of plaintiffs’ case, Dr. Minotty moved for directed verdict on the interception of communications claims, arguing that there was no evidence that wire communications had been intercepted in that no sound had been captured. The trial court denied the motion. The court also denied Dr. Minotty’s motion for directed verdict on the other issues he raised.
 

 After presentation of the case, the jury returned substantial verdicts in favor of the plaintiffs. On the derivative claims the jury returned a verdict for FEI, awarding $2 million for the breach of fiduciary duty to FEI, $2 million for the securities fraud against FEI in connection with the Surgi-center sale, and $2 million for fraud in connection with the Surgicenter sale. It also awarded $1,000 for the interception of communications as to FEI and $2.5 million in punitive damages on the interception claim.
 

 The jury found in favor of the individual doctors on their respective claims. On Drs. Todd and Zudans’s individual claims for invasion of privacy, the jury awarded $250,000 each. On Dr. Baudo’s individual claim of invasion of privacy, the jury awarded Baudo $100,000. On Drs. Todd, Baudo, and Zudans’s individual claims for breach of fiduciary duty, the jury awarded $500 each. On Dr. Zudans’s claim for fraudulent misrepresentation in the sale of securities, the jury awarded $200,000, the amount Dr. Zudans had paid for the stock. On Drs. Todd and Zudans’s claims for interception of communications, the jury awarded $1,000 each in compensatory damages and found that punitive damages were warranted against Dr. Minotty. The jury awarded $200,000 each in punitive damages on Drs. Todd and Zudans’s individual claims for interception of communications.
 

 Dr. Minotty now appeals all of the awards in favor of FEI. As to the individual doctors, he appeals their breach of fiduciary duty claims, and Dr. Zudans’s fraud claim. FEI cross-appeals the trial court’s denial of its motion to amend to add a claim for punitive damages as well as the trial court’s denial of an injunction against Dr. Minotty from exercising his “put” option to require purchase of his stock in FEI.
 

 I. Claim for Interception of Communications Pursuant to Section 934.10, Florida Statutes
 

 Dr. Minotty argues that the trial court erred in denying his motion for directed verdict on the illegal interception of communications claim because no oral communications were ever intercepted. FEI/doctors assert that mere recording of images equates to the interception of communications. They point out that interception includes “aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.” § 934.02(3), Fla. Stat. (2007) (emphasis added). Thus, the plaintiffs argue, interception of the video images is actionable, even without the interception of oral communications. We disagree.
 

 Section 934.03(l)(a) provides:
 

 
 *830
 
 Interception and disclosure of wire, oral, or electronic communications prohibited.
 

 (1) Except as otherwise specifically provided in this chapter, any person who:
 

 (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral or electronic communication;
 

 ⅜ * *
 

 shall be punished as provided in subsection (4) [imposing criminal liability]-
 

 By including the word “endeavor,” the statute would permit criminal liability for an attempt to intercept oral communications. However, the Legislature limited civil causes of action to cases of actual interception. Section 934.10, Florida Statutes provides:
 

 Civil remedies.
 

 (1) Any person whose wire, oral, or electronic communication
 
 is intercepted, disclosed, or used
 
 in violation of ss. 934.03-934.09 shall have a civil cause of action against any person or entity who
 
 intercepts, discloses, or uses,
 
 or procures any other person or entity to intercept, disclose, or use, such communications and shall be entitled to recover ...
 

 (emphasis added). FEI/doctors admitted that there was no evidence of an actual interception; thus, they did not prove the essential element of their cause of action. We reject FEI/doctors’ assertion that an attempted interception would be actionable.
 

 Armstrong v. Southern Bell Telephone and Telegraph Co.,
 
 366 So.2d 88 (Fla. 1st DCA 1979), supports the position that the civil remedy section requires actual interception of oral communications. There, Carroll had complained to Southern Bell that she was receiving harassing calls which she believed Armstrong was making. The phone company put a device on the phone line to record the numbers which Armstrong dialed, but it did not record her voice. Armstrong sued Southern Bell for damages for violation of 934.10. The phone company obtained a summary judgment. On appeal, the First District affirmed because it was uncontra-dicted that no oral communication was ever intercepted. There had been no recording or eavesdropping; there had merely been a recording of electrical impulses signifying the phone numbers called from Anderson’s phone.
 

 By its choice of statutory language, the Legislature did not create a civil cause of action for attempts to intercept oral communications. It provided for civil damages only for the actual interception, dissemination, or use of those communications. It is up to the Legislature, if it so chooses, to expand the civil cause of action to cover attempted interception of communications.
 

 FEI/doctors also argue that chapter 934 covers the interception of silent video images, and Dr. Minottys surveillance video clearly captured those. We disagree with this interpretation of the statute. Under the statute, the term “intercept” includes “the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.” § 934.02(3), Fla. Stat. (2007). While FEI/doctors contend that the silent video captures the contents of the communication, section 934.02(7) defines “contents” as including “any information concerning the substance, purport, or meaning of that communication.” The doctors’ physical conduct recorded on silent videotapes does not convey the
 
 substance
 
 of a particular communication.
 

 
 *831
 
 Chapter 934 was modeled after the Federal Wiretap Act, 18 U.S.C. section 2510
 
 et seq.,
 
 as amended by the Electronic Communications Privacy Act of 1986. Florida follows federal courts as to the meaning of provisions after which Chapter 934 was modeled.
 
 See O’Brien v. O’Bnen,
 
 899 So.2d 1133, 1135-36 (Fla. 5th DCA 2005). Federal decisions uniformly have held that the act’s provisions do not apply to surveillance that fails to capture the substance of any wire, electronic, or oral communications. For instance, in
 
 Sanders v. Robert Bosch Corp.,
 
 38 F.3d 736 (4th Cir.1994), a security company, which had been hired to protect a business, installed a “voice logger” which secretly recorded the telephone conversations of security guards in the security office. Later, the security company discontinued the use of the voice logger and ordered the equipment shut down, but unbeknownst to the company, a microphone was kept open through which ambient sound in the office could be picked up. No one knew of its existence, and no one listened to any of the tapes. No voices were ever recorded. A guard sued the company, alleging a violation of the federal wiretap act. The Fourth Circuit Court of Appeals held that no interception of conversations occurred during the period where the microphones were open, picking up only ambient sound, because the contents of the aural communication had not been intercepted.
 

 Several federal cases have held that the federal act does not apply to silent surveillance videos. In
 
 United States v. Koyomejian,
 
 970 F.2d 536, 541 (9th Cir.1992), the court held that silent surveillance videos were not covered by the Federal Wiretap Act, reasoning that the act did not apply to the interception of visual images without oral communications. The court stated:
 

 By its terms, the statute governs the interception of “wire, oral, or electronic communications....” 18 U.S.C. § 2511. The statute defines a “wire communication” as “any
 
 aural
 
 transfer made ... through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception_” 18 U.S.C. § 2510(1) (emphasis added). An “oral communication” is defined as “any
 
 oral
 
 communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such ex-pectation_”18 U.S.C. § 2510(2) (emphasis added). An “electronic communication” is “any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature
 
 transmitted ... by a wire....”
 
 18 U.S.C. § 2510(12) (emphasis added). Finally, “intercept” means “the aural or other acquisition of the
 
 contents of any wire, electronic, or oral communication
 
 through the use of any electronic, mechanical, or other device.” 18 U.S.C. § 2510(4) (emphasis added).
 

 By their plain meaning, these definitions do not apply to silent video surveillance.
 

 Id.
 
 at 538-39.
 
 See United States v. Jackson,
 
 213 F.3d 1269, 1280 (10th Cir.2000) (holding that the Federal Wiretap Act, which prohibits the intentional interception of “any wire, oral, or electronic communication,” did not apply to silent video surveillance camera on a telephone pole outside defendant’s residence),
 
 vacated on other grounds,
 
 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000);
 
 United States v. Falls,
 
 34 F.3d 674 (8th Cir.1994) (same).
 

 Most recently, in
 
 United States v. Barios,
 
 593 F.3d 82 (1st Cir.2010), the First Circuit also held that silent video surveillance is not covered by the terms of the act, noting that every other federal circuit
 
 *832
 
 which has addressed the issue has come to the same conclusion.
 

 By its terms, Title III regulates the interception and disclosure of “wire, oral, or electronic communication^].” 18 U.S.C. § 2511. The statute defines “intercept” as “the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.” 18 U.S.C. § 2510(4).
 
 Every circuit court to address the issue has concluded that Title III does not regulate silent video surveillance,
 
 [citations omitted] Appellants make no argument and cite no authorities to the contrary.
 

 We agree with our sister circuits that, by its plain meaning, the text of Title III does not apply to silent video surveillance.
 

 Id.
 
 at 90 (emphasis supplied). As the Florida statute is patterned after the federal statute and contains essentially the same language, we conclude that silent video surveillance is not covered by section 934.02 or 934.10. As in
 
 Larios,
 
 FEI/doctors have pointed to no authority holding that silent video surveillance is within the ambit of these provisions. Indeed, when one thinks of the extensive use of video surveillance today, it is not at all surprising that the Legislature has determined not to include it within its terms. Video cameras capture activity in the public streets, in our stores and banks, and even as nanny-cams in our homes. They are a valuable tool in fighting crime, preventing thefts, and keeping our homes safer. To hold that silent video camera surveillance would violate the terms of the act would create a substantial impediment to this useful technology in fighting crime. If the Legislature wishes to include silent video surveillance within the provisions of the act, it can do so. It is not up to the courts to rewrite the statute to include it.
 

 Dr. Minotty’s motion for directed verdict should have been granted. The plaintiffs did not prove their cause of action under the act. We thus reverse the final judgments entered in favor of both FEI and the individual doctors on their claims for interception of communications, including both the compensatory and punitive damage awards. We note, however, that the jury found in favor of the individual doctors for essentially the same conduct for invasion of privacy, and Dr. Minotty has not challenged that judgment.
 

 II. Breach of Fiduciary Duty Claim
 

 We reverse the final judgment in favor of FEI for breach of fiduciary duty, because the trial court allowed FEI to include the 2001 sale of the property by Dr. Minotty to FEI in its claim for damages for breach of fiduciary duty, even though that claim was never alleged in the pleadings. Counsel objected to the presentation of evidence on the issue at trial; yet, over objection, the trial court granted the plaintiffs motion to conform the pleadings to the evidence so as to include that claim before the jury.
 

 The breach of fiduciary duty count of FEI’s complaint included allegations regarding the 2003 sale and ongoing mismanagement of the corporation by Minotty. Nothing in the complaint remotely alleged that FEI was including the 2001 sale of Dr. Minotty’s property to FEI in the allegations of wrongdoing or damages. Where a claim is not pled, a jury may consider that claim
 
 only
 
 where the evidence in support was submitted without objection and an appropriate motion to conform the pleadings to the evidence is made.
 
 See Goldschmidt v. Holman,
 
 571 So.2d 422, 424 (Fla.1990);
 
 E.I. Du Pont De Nemours & Co. v. Desarrollo Indus. Bioa-
 
 
 *833
 

 cuatico S.A.,
 
 857 So.2d 925, 930 (Fla. 4th DCA 2003). Despite its total absence from the complaint, over Minotty’s objection, FEI was permitted to present substantial evidence regarding the transaction and the contention that Dr. Minotty had overvalued the property when selling it to his corporation.
 

 The 2001 transaction formed an integral portion of the damages on the breach of fiduciary claim, as even FEI acknowledged in its brief. An FEI expert testified that the damages from that transaction alone approximated $2 million, the amount the jury awarded.
 

 The trial court erred in submitting that claim to the jury as part of the breach of fiduciary duty claim. We therefore reverse. We remand, however, for a new trial on the breach of fiduciary duty claim, as there were other aspects of the claim, including the misallocation of funds for which recovery may still be allowed. It is impossible for us to determine whether the jury based its verdict on the 2001 land sale alone, or whether the jury also found that Dr. Minotty breached a fiduciary duty to FEI through the misallocation of funds between FEI and the Surgicenter. On remand, however, no claim may be made based upon the 2001 transaction.
 
 [2]
 

 III. FEI’s Securities Fraud and Common Law Fraud Claims
 

 In challenging the final judgments for securities fraud and common law fraud, Dr. Minotty contends that the awards on both counts duplicate each other. He moved for a remittitur to reduce the verdict by the amount of the duplication, which was denied. We reverse.
 

 Through the shareholder’s derivative suit, FEI claimed that Dr. Minotty had misrepresented the agreement to the shareholders and engaged in self-dealing. The complaint alleged two alternative theories for damages, securities fraud and common law fraud.
 
 [3]
 
 At trial FEI’s expert testified that FEI overpaid for the stock by $3,852 million. The verdict form proposed by FEI asked the jury to decide both issues and determine the damages incurred as to both. The jury returned a verdict finding that Dr. Minotty committed securities fraud in connection with the 2003 sale of the Surgicenter stock and that FEI’s total amount of damages was $2 million. It also found that Dr. Minotty did “commit fraudulent misrepresentation” in the 2003 Surgicenter stock sale and assessed $2 million on that claim.
 

 Dr. Minotty filed a motion requesting remittitur, arguing that the securities fraud claim and the common law fraud claim were simply alternative theories for the same damages. Therefore, the two $2 million awards were duplicative of each other. The trial court denied the motion, and Dr. Minotty raises the duplication of damages on appeal. Because he brought this error to the court’s attention in his motion for remittitur, we conclude that it has been preserved.
 

 “A double recovery based on the same elements of damages is prohibited.”
 
 Montage Group, Ltd. v. Athle-Tech Computer Sys., Inc.,
 
 889 So.2d 180, 199 (Fla. 2d DCA 2004). We have examined the complaint, the evidence, the argument, and the jury verdict forms. It is clear that the securities fraud claim and the common law
 
 *834
 
 fraud claim both involve the 2003 Surgi-center sale and rely on the same element of damages. As such, recovery on both counts is prohibited. The court should have entered judgment only once on the two counts.
 

 FEI contends that Dr. Minotty should have objected at trial if the verdict appeared ambiguous. To the contrary, we think that FEI should have brought any question regarding the verdict and the potential for double recovery to the attention of the court. When instructing the jury on securities fraud and fraudulent misrepresentation, the court recited the elements of both claims and only then told the jury to consider the damages. Thus, the instructions required the jury to make only one computation of damages on the fraud claims. During the charge conference, however, FEI insisted that the verdict allow the jury to determine the damages after each claim. The court used FEI’s proposed verdict form which permitted the jury to enter a separate damage award on each fraud claim. The jury returned the same damages for each claim. If the improper jury findings were the result of an imperfect verdict form, that form was proposed by FEI.
 

 Alternatively, FEI argues that the jury may have split the damages between two counts. We rejected a similar argument in
 
 Osheroff v. Rauch Weaver Millsaps & Co.,
 
 882 So.2d 503 (Fla. 4th DCA 2004). There a broker had obtained a judgment for both tortious interference with its broker’s commission contract and civil conspiracy to breach the contract. The damages, i.e., the brokerage commission, were the same for each count. In a footnote we determined that the jury could not do so:
 

 We recognize, as the brokers argue, that the jury entered an award for separate amounts on the civil conspiracy claim and the tortious interference claim, which suggests that the jury may have taken it upon itself to apportion damages either between the parties or between the claims. Even if this were the case, the jury had no right to do so based on the evidence presented and the legal instructions given by the trial judge.
 

 Id.
 
 at 507 n. 1.
 

 Similarly, in this case the jury was properly charged, although the verdict form may have been defective. Looking at the form, we cannot tell what the jury intended to do. It could have apportioned damages between the two claims, although the damages requested by FEI at trial for the Surgicenter sale amounted to $3.8 million, not $4 million. Or it could have determined the same amount for each claim, recognizing that the damages were the same. But the jury had no right to apportion damages between the two claims. Based upon our opinion in
 
 Osheroff,
 
 the court erred in failing to reduce the judgment by the amount of one of the claims.
 

 We reject Dr. Minotty’s remaining arguments against any recovery on these claims as well as on the breach of fiduciary duty claim.
 

 IV. Dr. Zudans’s Fraudulent Misrepresentation Claim
 

 Dr. Zudans sued Dr. Minotty for fraudulent misrepresentation in connection with Dr. Zudans’s purchase of stock in FEI, for which he paid $200,000. The jury found for Dr. Zudans and awarded $200,000 in damages. We reverse the award, because the verdict is against the manifest weight of the evidence, as Dr. Zudans presented no evidence of the amount of his loss.
 

 Dr. Zudans testified at trial that he had paid $200,000 for his stock in FEI. He claimed in his complaint and at trial that at
 
 *835
 
 the time of his purchase he did not know that Dr. Minotty was essentially self-dealing in the sale of the surgical center to FEI, which Dr. Zudans alleged that Dr. Minotty overvalued by a considerable amount. Had he known of Dr. Minotty’s self-dealing, he said he would not have purchased the stock. Dr. Zudans offered no evidence as to the fair market value of the stock at the time of purchase.
 

 Although Dr. Minotty did not move for a directed verdict at the close of the evidence, he did move for a new trial on Dr. Zudans’s fraud claim on the ground that it was contrary to the manifest weight of the evidence, i.e., that there was no evidence of any loss to Dr. Zudans. The issue was thus preserved for appeal.
 
 See Perlman v. Ferman Corp.,
 
 611 So.2d 1340, 1341 (Fla. 4th DCA 1993) (explaining that where a party did not seek a directed verdict on the ground that the plaintiff failed to prove damages, the party was still entitled to a new trial where the verdict was contrary to the manifest weight of the evidence).
 

 As we explained in
 
 Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.,
 
 955 So.2d 1124, 1132 (Fla. 4th DCA 2007):
 

 It is fundamental that “[a]ctual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud.” “Damage is of the very essence of an action for fraud or deceit.” Without proof of actual damage the fraud is not actionable. Thus, to prevail in an action for fraud, a plaintiff must prove its actual loss or injury from acting in reliance on the false representation,
 

 (citations and footnote omitted).
 

 Florida has developed a “flexibility” theory of damages in cases of fraudulent misrepresentation to assure that an injured party will obtain full compensation for the effect of the fraud.
 
 See Morgan Stanley,
 
 955 So.2d at 1128 (citing
 
 Nor-dyne, Inc. v. Fla. Mobile Home Supply, Inc.,
 
 625 So.2d 1283, 1286 (Fla. 1st DCA 1993)). An injured party may recover either the out-of-pocket loss or the benefit of the bargain loss. We explained both theories in
 
 Martin v. Brown,
 
 566 So.2d 890 (Fla. 4th DCA 1990):
 

 The first standard is the “benefit of the bargain” rule which awards as damages the difference between the actual value of the property and its value had the alleged facts regarding it been true. The second standard is the “out-of-pocket” rule which awards as damages the difference between the purchase price and the real or actual value of the property.
 

 Id.
 
 at 891-92. Note that each measure of damages requires that the jury have evidence of the actual value of the property in question. In
 
 Morgan Stanley
 
 the expert did not testify to the actual value of the stock in question, a fatal flaw in the fraud action. Without the proof of the actual value of the stock, the plaintiff had not proved its damages.
 

 In this case, no evidence was ever presented as to the actual value of the stock on the date in question. The only evidence tending to prove its value was the amount of the purchase price. Therefore, Dr. Zu-dans did not prove any damages as a result of the action. Because Dr. Minotty did not move for a directed verdict, however, and moved only for a new trial, we reverse and remand for a new trial on the fraudulent misrepresentation claim.
 

 V. Individual Doctors’ Breach of Fiduciary Duty Claim
 

 Dr. Minotty maintains that the trial court should have granted a directed verdict on the individual doctors’ claims of breach of fiduciary duty because they failed to prove damages. The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary
 
 *836
 
 duty; (2) its breach; and (3) damages proximately caused by the breach.
 
 See Gracey v. Eaker,
 
 837 So.2d 348, 353 (Fla.2002). Where a breach of fiduciary duty is shown but no actual damages are proved, nominal damages may be awarded.
 
 See Stevens v. Cricket Club Condo., Inc.,
 
 784 So.2d 517, 519 (Fla. 3d DCA 2001). Because the jury found that a breach of fiduciary duty occurred and awarded nominal damages, no error occurred.
 

 VI. Cross-Appeal
 

 On cross-appeal, FEI and the doctors maintain that the trial court erred in denying their motion to amend their complaint on the eve of trial to assert a claim for punitive damages on their breach of fiduciary duty and fraud claims. We conclude that the trial court did not abuse its discretion in denying the late-filed motion to amend.
 

 Even though the fraud and fiduciary duty claims had been pending since the institution of the suit, FEI/doctors did not file or serve their motion to amend to include punitive damages until less than twenty days prior to trial.
 
 See
 
 Fla. R. Civ. P. 1.190(f) (requiring at least twenty days’ notice of the motion prior to hearing). The trial actually started, and the jury was selected and sworn before the court considered the motion to amend. Because of the late filing, the court denied the motion, noting that the plaintiffs could have brought the motion as to those claims much earlier. Under those circumstances, we find no abuse of discretion in denying the motion. We distinguish
 
 Burr v. Norris,
 
 667 So.2d 424 (Fla. 2d DCA 1996), cited by FEI/doctors, which was decided prior to the adoption of Rule 1.190(f).
 
 Burr
 
 is factually different, and the motion to amend was made at least a month prior to the start of trial, whereas in this case the motion was filed slightly more than two weeks prior to trial.
 

 As their second issue on cross-appeal, FEI/doctors appeal the trial court’s denial of an injunction. After the verdict, FEI/doctors moved to enjoin Dr. Minotty from exercising the “put” option for the second half of the surgery center sale. The trial court refused to enjoin Dr. Minotty from exercising the “put” option, because FEI/doctors had not requested such relief in their complaint. We affirm. A circuit court is not authorized to grant injunctive relief where an injunction has neither been requested, nor proven.
 
 See City of Indian Rocks Beach v. Tomato,
 
 834 So.2d 341, 342 (Fla. 2d DCA 2003). FEI/doctors did not seek to enjoin Dr. Minotty’s exercise of the “put” option in their pleadings, and the essential allegations to support an injunction are missing. The issue of an injunction was not tried by express or implied consent.
 
 See
 
 Fla. R. Civ. P. 1.190(b). Finally, FEI/doctors did not prove all of the essential allegations, which are (1) a clear legal right, (2) an inadequate remedy at law, and (3) that irreparable harm will arise absent injunc-tive relief.
 
 See K.W. Brown & Co. v. McCutchen,
 
 819 So.2d 977, 979 (Fla. 4th DCA 2002). While the parties dispute all three elements, we conclude the trial court did not err in denying this post-verdict motion.
 
 [4]
 

 Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
 

 TAYLOR and MAY, JJ., concur.
 

 [1]
 

 . Baudo was left out due to an oversight.
 

 [2]
 

 . The 2003 Surgicenter transaction also formed part of the breach of fiduciary duty claim. Because we also hold in section III that FEI may not be compensated twice for the same damages, on remand the 2003 Sur-gicenter transaction should also be omitted in the breach of fiduciary duty claim.
 

 [3]
 

 .
 
 See
 
 n. 2.
 

 [4]
 

 . We do not decide in this appeal whether injunctive relief is barred by the election of remedies doctrine.