MAY, J.
A property owner appeals a final judgment that determined the number of lots that could be assessed against him by the homeowners association. He argues the trial court erred in permitting the association to assess him for eight lots. The association cross-appeals a portion of the same judgment that determined it was not entitled to reimbursement of assessments paid to the larger development. We affirm the appeal and reverse the judgment on the cross-appeal.

The Entities

The Villas at Muirfield (the “Villas”) is a sub-community within the larger development of Palm Beach Polo and Country Club. The Villas is governed by the Muir-Villas Homeowners Association, Inc. (the “Association”), a sub-association of Palm Beach Polo and Country Club Property Owners’ Association, Inc. (the “POA”). The property owner (the “Owner”) also owns 100% of Palm Beach Polo Holdings, Inc., which owns the development Palm Beach Polo and Country Club and all of the properties within the larger development.

The Governing Documents

The rights and responsibilities of the Association and the Villas’ residents are contained in the “Declaration of Covenants, Conditions and Restrictions for Villas at Muirfield of Palm Beach Polo and Country Club-Wellington P.U.D.” (the “Declaration”). Article VII, Section 1 of the Declaration provides that each lot within the Villas is subject to, and the owner of any lot within the Villas agrees to pay, assessments charged by the Association. The Association’s board of directors has the power to levy the assessments, and “[e]ach lot shall bear an equal share of the total assessments.” In the event of nonpayment of assessments, the Association has the power to place a lien on the property and to foreclose the lien.
The POA charges the Association assessments for maintaining the larger community. The Association then assesses the Villas’ residents for maintaining the Villas. About 75% of each quarterly assessment is for maintenance expenses incurred by the Association. The remaining 25% is to offset the assessment that the POA charges the Association. The Association has to pay the POA assessments regardless of whether the Villas’ residents pay their assessments to the Association.

The Owner’s Land

The Villas consists of several plats of land; each plat is divided into several lots. Plat 5 was added to the Villas in 1988, and the Declaration was amended to subject Plat 5 to the terms and conditions of the Declaration. Plat 5 originally consisted of nine lots. In 1989, the prior owner purchased three and one-half of the original nine lots in Plat 5. The prior owner and *887 the owner of the other five and one-half lots within Plat 5 recorded a re-plat of Plat 5. The re-plat reconfigured the nine existing lots into four larger lots.
In 2006, the Owner and his wife purchased lots one through six (re-platted lots one and two). In February 2007, the Owner’s wife transferred the property to the Owner by quit-claim deed. The same day, the Owner purchased lots seven and eight (re-platted lot three) from a third party. The Owner then owned lots one through eight (re-platted lots one through three). Lot nine is owned by a third party not involved in this case.
The Owner performs the maintenance on his property without assistance from the Association. In exchange for maintaining his own property, the Owner was allowed to pay a reduced assessment, which was about 50% of the assessment paid by other owners. This agreement began with the prior owner and is reflected in two amendments to the Declaration. Despite this agreement, the Owner has never paid an assessment.

The Current Case

After giving the Owner proper notice, the Association filed a Claim of Lien against his lots for non-payment of assessments. When the Owner failed to pay the assessments, the Association filed a complaint to foreclose the lien. The Owner filed an amended answer and asserted six affirmative defenses, including an allegation that the assessments were unlawfully rendered. The Association denied the Owner’s affirmative defenses.
At a bench trial, the Owner argued that he is exempt from paying assessments under the Declaration, and if he is required to pay them, they should be charged based on the re-platted number of lots. The Association argued that it was entitled to recover assessments on all eight lots because it never amended the Declaration to reflect the re-plat of those lots.
The trial court found that the Association was entitled to assess the Owner’s property as eight separate lots at a rate of 50% per lot. The trial court also found that the Association was not entitled to recover the POA assessments that it paid upfront on the Owner’s property because the Owner was the Declarant by assignment, entitled to elect to fund any deficiency in the POA’s assessment account rather than pay the assessment pursuant to the bylaws. The final judgment ordered the Owner to pay to the Association $145,824.67 in past-due assessments, late fees, and interest, and $71,955.04 in attorney’s fees and costs. From this judgment, the Owner now appeals. The Association cross-appeals the portion of the order finding that the Owner is not required to reimburse the Association for the POA assessments paid by the Association.
The Owner argues that the Declaration is ambiguous as to how assessments should be charged, and the Declaration should be construed against the Association as the drafter. Reading the Declaration in his favor and applying the definitions set forth in Section 720.301, Florida Statutes (2007), the Owner argues that the plats should be assessed according to the three lots identified in the re-plat. The Association responds that the ambiguity argument is unpreserved, and that the re-platting is irrelevant because the Association did not approve it, and the Declaration was not amended to reflect the re-plat.
“Matters of contract and statutory interpretation are reviewed de novo.” Heron at Destin W. Beach & Bay Resort Condo. Ass’n v. Osprey at Destin W. Beach, 94 So.3d 623, 628 (Fla. 1st DCA 2012).
*888 An “assessment” is “a sum or sums of money payable to the association, ... by the owners of one or more parcels as authorized in the governing documents, which if not paid by the owner of a parcel, can result in a lien against the parcel.” § 720.301(1), Fla. Stat. (2007). A “parcel” subject to assessments is a platted or un-platted piece of real property within a community, “as described in the declaration,” and “capable of separate conveyance.” § 720.301(11), Fla. Stat. (2007). “Assessments ... must be in the member’s proportional share of expenses.” § 720.308(l)(a), Fla. Stat. (2007).
The statutes discussing assessments refer to the “governing documents” as controlling. The “governing documents” include the recorded declaration, the articles of incorporation, the bylaws, and all duly adopted and recorded amendments. § 720.301(8), Fla. Stat. (2007). Under the Declaration, each owner is required to pay his or her portion of assessments based on the number of lots that he or she owns. “ ‘Lot’ shall mean one of the numbered parcels of land into which The Properties have been subdivided according to the Plat referred to in Article II .... ”
The Plat referred to in Article II of the Declaration is “Muirfield Plat No. 3,” as well as any property added to the Declaration “by filing in the Public Records of Palm Beach County a Supplemental Declaration as to the additional property .... ” In 1988, Plat 5 was added by supplemental declaration. As of 1988, all nine lots in Plat 5 were included in Article II and were subject to assessments like every other lot within the Villas.[1]
The definition of “Lot” in the Declaration is not ambiguous. “Lot,” as defined in the Declaration, “shall mean one of the numbered parcels of land into which The Properties have been subdivided according to the Plat referred to in Article II .... ” The Owner argues that this definition is ambiguous because it says that assessments should be charged “according to the Plat,” and that could refer to the re-plat. However, the Declaration specifically refers to the Plat referred to in Article II, which includes the validly executed amendments to Article II. The validly executed amendment to Article II includes a description that corresponds to Muirfield— Plat No. 5 of Palm Beach Polo and Country Club, Wellington P.U.D., as recorded in Official Plat Book 60, pages 135 and 136, of the public records of Palm Beach County, Florida. The plat on pages 135 and 136 of book 60 includes nine lots. The Declaration was never amended to include the re-plat.
There is nothing ambiguous about the Declaration’s operative language. It unambiguously states that assessments are charged according to the number of lots specified in Article II, which provides that plat 5 has nine lots, eight of which are owned by the Owner.[2]

Cross-Appeal

In its cross-appeal, the Association argues the Owner insufficiently pled the affirmative defense of assignment, and the trial court erred in considering that defense. The Owner responds that his affir *889 mative defense was sufficiently pled, and the Association knew of the defense because it was referenced in the stipulated issues to be determined at trial. We agree with the Association and reverse on this issue.
Palm Beach Polo and Country Club Holdings, Inc. is identified as the “Declar-ant” in the Amended and Restated Bylaws of Palm Beach Polo and Country Club Property Owners’ Association, Inc., the bylaws of the POA. Article XI, Section 11.11 states in pertinent part:
11.11 Declarant’s Assessments.
[A]s long as Declarant (or any of its affiliates) is the Owner of any Residential Unit or Residential Property within the Properties, Declarant shall have the option, in its sole discretion, to (i) pay assessments on the Residential Units and Residential Property owned by it as provided herein, or (ii) not pay any assessments and in lieu thereof fund any resulting deficit in the Association’s operating expenses not produced by assessments receivable from Members other than Declarant.
The Owner made two arguments for exemption from the POA fees. First, he argued that he is the “Declarant” for purposes of POA assessments and, therefore, is not required to pay assessments if he agrees to fund any resulting deficit.[3] Alternatively, he argued that if he is not the Declarant, he can still receive the Declar-ant’s benefits because those rights were assigned to him. The trial court relied on the second argument.
Article I, Paragraph 1.1(g) of the POA Bylaws states in pertinent part:
Declarant may assign all or any portion of its rights hereunder in toto or with respect to any specified portion of the Properties, in any such case by written assignment recorded in the Public Records of Palm Beach County, Florida.
(Emphasis in original). The Owner’s expert witness testified that Palm Beach Polo Holdings, Inc. assigned its rights to the Owner as the sole owner of the company. The Association objected to this testimony because assignment was not raised as an affirmative defense. The trial judge overruled the objection and allowed recross examination on what the court stated was “that one new issue that you have raised with respect to assignment.”
The Owner testified that the Declarant made an assignment of rights to the Owner. Although he did not have a copy of the written assignment, he remembered seeing one. The Owner’s attorney identified documents that reflected the assignment, but the Association’s attorney objected because they were not on the exhibit list. The documents were not admitted into evidence, but were used to refresh the Owner’s memory. The Owner testified that Palm Beach Polo Holdings, Inc. assigned its rights under Section 11.11 to him and his wife.
The Association’s expert witness testified that individual owners could not be successor declarants. The expert also testified that he did not see any recorded assignments evidencing an assignment from the POA to the Owner during his title search.
The trial court found that:
MUIR-VILLAS is not entitled to recover the funds it paid to the POA, which the POA claimed STRAUB owed *890 for POA assessments. STRAUB is the Declarant by virtue of an assignment from Palm Beach Polo and Country Club Holdings, Inc. As the Declarant STRAUB exercised his option to fund any resulting deficit in the POA’s operating expenses in lieu of paying assessments.
We agree with the Association that the Owner neither pleaded assignment as an affirmative defense nor listed it as an issue for trial in the pre-trial stipulation.
The Owner’s third affirmative defense provided in pertinent part:
Specifically, the notice requirements of a board of directors meeting to consider assessments under § 720.303(2)(c)(2), Fla. Stat., was not met by Plaintiff and the subject Declaration upon which Plaintiff has sued and the Declaration of the Palm Beach Polo and Country Club Property Owners Association, Inc. exempts the Defendant Declarant from assessments.
The Joint Pre-Trial Stipulation provided that an issue for trial was: “Whether Defendant, Glenn F. Straub, is exempt from paying the Plaintiff, Muir-Villas, assessments because he is the ‘Declarant’ of Palm Beach Polo?” and “Whether Defendant, Glenn F. Straub, is exempt from paying Plaintiff, Muir-Villas, the portion of the assessments due by Plaintiff to the Master Property Owners Association because he is the “Declarant” of Palm Beach Polo?” Neither the affirmative defense nor the stipulation contained the word “assignment,” and even the trial court noted the “new issue.”
Rule 1.140(b)of the Florida Rules of Civil Procedure provides that:
Every defense in law or fact to a claim for relief in a pleading shall be asserted in the responsive pleading, if one is required .... Any ground not stated shall be deemed to be waived except any ground showing that the court lacks jurisdiction of the subject matter may be made at any time.
“[A] pleading in response to a previous pleading must affirmatively set forth all affirmative defenses on which the pleader plans to rely. The objective of this requirement is to timely present and join the issues on which the parties will rely and to preserve issues for appellate review.” Coral Ridge Props., Inc. v. Playa Del Mar Ass’n, 505 So.2d 414, 417 (Fla.1987).
The Owner did not plead assignment as an affirmative defense, and the stipulation failed to assert assignment as an issue to be decided at trial. The trial court erred in considering assignment as a defense to the Association’s claim. See, e.g., Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988); E.I. Du Pont De Nemours & Co. v. Desamllo Indus. Bioacuatico S.A., 857 So.2d 925 (Fla. 4th DCA 2003).[4]
We therefore affirm the judgment against the owner, reverse on the cross-appeal, and remand to the trial court to correct the judgment.

Affirmed in part, reversed in part and remanded.

DAMOORGIAN, C.J., and FORST, J., concur.

. In 1992 and 1993, the Declaration was again amended to reflect the agreement between the Association and the prior owner regarding an assessment discount for performing his own maintenance. Thus, as of 1993, all nine lots in Plat 5 were subject to assessments like every other lot within the Villas, but the owner of those lots was given a 50% discount. The 1992 and 1993 amendments refer to Plat 5 as containing nine lots.

. We find no merit in the owner's next argument that he should be charged according to the re-plat because the Association approved the re-plat.

. The Owner, although he is the owner of the "Declarant,” did not take title to the property in the name of the corporation. No corporate entities own any of the subject lots in the Villas. The property tax records reflect the Owner as the individual owner of lots one through eight, and he has a homestead exemption on lots one through six.

. This issue was not tried by consent. United Am. Lien & Recovery Corp. v. Primicerio, 924 So.2d 848, 851 (Fla. 4th DCA 2006).